IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:                                      ) | |
|                                              ) | |
| **THE FARMERS COOPERATIVE**   ) | CIVIL ACTION |
| **ASSOCIATION,**                    ) | |
|                                              ) | No. 05-2178-CM |
|     **Debtor.**                            ) | |
|                                              ) | |
|                                              ) | |

## MEMORANDUM AND ORDER

This is an appeal of the final Judgment and Order of the bankruptcy court. In this case, the plaintiff-appellee CoBank, ACB ("CoBank") appeals the April 19, 2005 Order of Judge Terrance L. Michael of the United States Bankruptcy Court for the District of Kansas, which denied CoBank's motion for post-confirmation attorneys fees and expenses against defendant-appellant the FCA Post-Confirmation Trust ("the Trust"). The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. At issue is whether the bankruptcy court committed reversible error when it ruled that CoBank was not entitled to attorneys fees under 11 U.S.C. § 506 or administrative fees under 11 U.S.C. § 503(b). This court affirms.

**I.      Background**

The parties stipulated to the facts before the bankruptcy court. This opinion contains only a brief review of the facts. A complete statement of facts is contained in the bankruptcy court's opinion. *See In re Farmers Coop. Ass'n*, 323 B.R. 494 (Bankr. D. Kan. 2005).

The Farmers Cooperative Association ("FCA" or "the Debtor") and CoBank entered into a lender-borrower relationship on January 31, 2000. The instant dispute arose on September 27, 2000, when FCA filed a voluntary petition for Chapter 11 bankruptcy. Mediation between the interested parties

resulted in resolution of all of the issues except one. On December 7, 2001, the bankruptcy court entered an Order Approving Compromise and Settlement Between Debtor and CoBank ("Compromise Order"), which provides in relevant part:

> a. Upon entry of an order approving the application, Debtor shall pay to CoBank the sum of $10,649,039.37, which is the stipulated amount of the unpaid balances of the seasonal line and the term note owed CoBank as of the Petition Date. The payment of the $10,649,039.37 must be made on or before December 31, 2001.
>
> b. Upon entry of an order approving the application, Debtor shall transfer Debtor's CoBank stock to CoBank in full and complete satisfaction of any and all post-petition interest and attorneys fees CoBank claims it may be entitled to from the bankruptcy estate with regard to all matters being settled pursuant to this application. As of June 30, 2001, Debtor estimated CoBank's stock had a value of $1,419,958.66. . . . CoBank reserves its rights to seek attorneys fees after the date of entry of an order approving this application solely in connection with any Lender Liability Claims filed against CoBank whether under its loan documents or otherwise; and the Debtor, Creditors' Committee, and Equity Committee reserve their rights to oppose any such request. The parties agree that in the event CoBank is ultimately permitted to recover attorneys fees incurred in connection with the Lender Liability Claims, CoBank shall be entitled to seek payment of any such fees only from the entities bringing an action against CoBank, including inter alia the bankruptcy estate and the trust ("Trust") created pursuant to the liquidating plan of reorganization, as may be amended (the "Amended Plan"), provided, however, that CoBank shall not be entitled to seek or obtain disgorgement of any funds paid to creditors or equity holders pursuant to the Amended Plan or the Trust, or from any funds disbursed under the Amended Plan or by the Trust pursuant to the terms of the Amended Plan . . . .
>
> d. CoBank shall not hold any secured or unsecured claims nor participate in any distributions to unsecured creditors in this case upon the requirements of Sections 9 a. and 9 b. being satisfied.
>
> . . . .

> g . . . The Debtor, CoBank, the Creditors' Committee and the Equity Committee further agree that nothing contained in the Application is an admission that CoBank is or is not an over secured creditor.

The Debtor paid CoBank the sum of $10,649,039.37 on December 7, 2001. Also on that date, the Debtor returned to CoBank the stock pursuant to paragraph 9.b of the Compromise Order.

On December 21, 2001, the Debtor's First Amended Liquidating Plan of Reorganization was filed (the "Plan"). On January 30, 2002, the Bankruptcy Court entered an Order Confirming the Debtor's First Amended Liquidating Plan (the "Confirmation Order"). The Confirmation Order became final and non-appealable on February 12, 2002. Pursuant to the terms of the Plan and Confirmation Order, the Trust was created and continues to perform the functions designated by the Plan and approved by the Confirmation Order.

The remaining issue between the parties was whether CoBank was liable for alleged lender liability claims. Therefore, on August 22, 2002, CoBank filed a Complaint for Declaratory Relief ("Declaratory Complaint") in the United States District Court for the District of Kansas against the Reorganized Debtor and the Trust styled: *CoBank, ACB, v. The Reorganized Farmers Cooperative Association and FCA Post-Confirmation Trust*, Case No. 02-1300-JTM (the "Lender Liability Litigation").

In its prayer for relief in the Declaratory Complaint, CoBank specifically requested, among other things, "a judgment awarding CoBank its costs and attorneys fees." CoBank's Answer to the Reorganized Debtor and Trust Amended Counterclaim also requested that it be "awarded its costs and attorneys fees." In addition, CoBank raised the issue of attorneys fees in Final Pretrial Order. The parties' own stipulated facts, however, stated that CoBank did not include a request for attorneys fees in the Final Pretrial Order. The bankruptcy court relied on this stipulation, but acknowledged in a footnote that it believed that the issue

-3-

of attorneys fees was mentioned in the Final Pretrial Order. In its summary judgment motion, CoBank did not request that it be awarded attorneys fees.

On September 9, 2004, Judge Thomas Marten granted CoBank's motion for summary judgment as to all of the counterclaims in the Lender Liability Litigation, but did not award CoBank its attorneys fees and costs. CoBank never sought an award of attorney fees pursuant to Fed. R. Civ. P. 54 from the District Court of Kansas in connection with the Lender Liability Litigation. On March 14, 2006, the Tenth Circuit affirmed the district court's decision to grant CoBank's summary judgment motion.

Between September, 2002, the month when the Reorganized Debtor and the Trust filed their initial counterclaim against CoBank, and September 2004, when Judge Marten granted CoBank's motion for summary judgment dismissing all of the counterclaims, CoBank claims it incurred legal fees and expenses totaling $691,927.84.

## II.     Standard of Review

The standard of review used by the district court to review the bankruptcy court is the same as that used by the court of appeals to review the factual and legal determinations of the district court. *Yellow Cab Coop. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Coop. Ass'n)*, 132 F.3d 591, 596 (10th Cir. 1997). Legal decisions of the bankruptcy court are reviewed de novo and factual findings are reviewed for clear error. *Id.* at 596-97; *see also In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991). "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *Yellow Cab*, 132 F.3d at 597 (quoting *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996)). The Tenth Circuit has further explained "clearly erroneous":

> If the [bankruptcy] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

*Sec. Investor Prot. Corp. v. Stellatos (In re Blinder, Robinson & Co.)*, 124 F.3d 1238, 1241 (10th Cir. 1997) (brackets in original) (citations omitted).

### III.     Analysis

### A.     Attorneys Fees Under 11 U.S.C. § 506

CoBank argues that it is entitled to attorneys fees and costs under § 506(b) of the United States Bankruptcy Code. Section 506(b) provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Contrary to CoBank's assertions, § 506(b) must be analyzed in conjunction with § 506(a). *In re DeNofa*, 124 Fed. Appx. 729, 731 (3d Cir. 2005) ("Subsections (a) and (b) [of § 506] work closely together, and one cannot correctly understand and apply the latter before understanding and applying the former."). Section 506(a) defines "[a]n allowed claim of a creditor," 11 U.S.C. § 506(b), while § 506(b) requires a creditor to have an "allowed secured claim," 11 U.S.C. § 506(b). Therefore, in order to qualify for attorneys fees under § 506(b), that party must be a creditor.

The bankruptcy court held that CoBank does not qualify as a "creditor" as defined in 11 § 101(10), citing several cases in support of the application of this definition. *See, e.g., Hobson v.*

*Travelstead (In re Travelstead)*, 227 B.R. 638, 647 (D. Md. 1998) (finding that a "creditor" under 11 § 101(10) "is defined to include only holders of prepetition claims against the Debtor") (citations omitted). Section 101(10) states:

> The term "creditor" means—
> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
> (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
> (C) entity that has a community claim.

The bankruptcy court found that CoBank does not qualify as a "creditor" because its claim for attorneys fees arose post-petition. *See* 2 KING ET AL., COLLIER ON BANKRUPTCY ¶ 101.10 (15th rev. ed. 2004) ("'Creditor' is generally defined as a holder of one or more prepetition claims against the debtor. Under paragraph (A), only holders of claims that arose prior to the commencement of the bankruptcy case are considered to be creditors.") (footnotes omitted). CoBank disagrees with the bankruptcy court's application of § 101(10), arguing that "the court assumes that a very narrow definition of 'creditor.'" CoBank also argues that its claim for attorneys fees relates back to its prepetition claim, which was contingent on FCA pursuing the Lender Liability Litigation. Significantly, CoBank does not offer a better, less narrow statutory definition of a "creditor" under the Bankruptcy Code, nor does it offer any caselaw in support of its position that the definition of a "creditor" under § 101(10) encompasses contingent claims.

The bankruptcy court held:

> There is nothing in the Compromise Order which preserved any portion of CoBank's prepetition claim. . . . Any claim which CoBank may hold against the FCA and/or the Trust is a post-petition claim. The holder of a post-petition claim is not a creditor for purposes of § 506 of the Bankruptcy Code.

*In re Farmers Coop. Ass'n*, 323 B.R. at 504.  The court agrees.  CoBank is not a creditor as defined by § 101(10), and therefore does not qualify for attorneys fees under § 506(a) and (b).

The court has thoroughly reviewed the parties' numerous other arguments on this issue.  However, because the court finds that CoBank does not meet the definition of a "creditor" pursuant to § 101(10), further analysis of § 506 is unnecessary.

**B.      Administrative Fees Under 11 U.S.C. § 503(b)**

As an alternative to § 506 attorneys fees and costs, CoBank argues that it is entitled to its attorneys fees as an administrative expense under 11 U.S.C. § 503(b).  The bankruptcy court denied this request, finding that CoBank does not meet the requirements of § 503(b).  Again, the court agrees.

Section 503(b) provides an allowance for administrative expenses, including "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  As discussed by the bankruptcy court, the Tenth Circuit provides a two-prong test for whether a claim is entitled to administrative expenses.  The second prong of that test requires that the "estate must have benefitted in some demonstrable way, i.e., the expense must have been necessary to preserve the estate."  *Gen. Am. Transp. Co. v. Martin (In re Midregion Petroleum Inc.)*, 1 F.3d 1130, 1132-33 (10th Cir. 1993).  CoBank argues that by entering into a compromise with FCA, the estate as a whole benefitted.  However, CoBank's attorneys fees were generated by CoBank to defend CoBank, post-petition, from the Lender Liability Litigation.  The estate incurred no benefit from CoBank's post-petition legal pursuits.  Accordingly, the court finds that CoBank does not qualify for § 503(b) administrative expenses, and the court affirms the bankruptcy court on this issue.

**IT IS THEREFORE ORDERED** that the final Judgment and Order of the bankruptcy court is affirmed.

Dated this 7th day of April 2006, at Kansas City, Kansas.

 s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**